IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 15, 2020

**SHANTONIO LOVETT HUNTER v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2013-D-3164     Cheryl A. Blackburn, Judge**

————————————————

**No. M2020-00283-CCA-R3-PC**

————————————————

Petitioner, Shantonio Lovett Hunter, was indicted for six counts of aggravated child abuse, one count of aggravated child neglect, and two counts of felony murder. Pursuant to a negotiated plea agreement, Petitioner entered a guilty plea to second degree murder in exchange for a sentence of 28 years. Petitioner subsequently filed a petition seeking post-conviction relief, alleging that her trial counsel was ineffective and her plea was involuntarily and unknowingly entered. Following an evidentiary hearing, the post-conviction court denied relief. Petitioner has appealed, and having reviewed the entire record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, Shantonio Lovett Hunter.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Plea submission hearing*

At Petitioner's plea submission hearing, the State gave the following as a factual basis for Petitioner's guilty plea:

[T]he [S]tate's proof in this case would be that the victim was [E.H.], who was born on September 14th of 2009. [Petitioner] was the mother. She had custody of him, and he was living with her during the month of April 2013. Also in the household was [Petitioner]'s codefendant and boyfriend Donald Harris, who has previously been severed and convicted after a trial.

The proof in this case would have been that the victim, [E.H.], went to daycare on Monday, April 22nd of 2013. When he returned home from daycare, he was beaten with a belt. The codefendant in this case, Donald Harris, made statements to police that he, in fact, whipped the victim with the belt. [Petitioner] made statements that there was bruising and injury on the victim [E.H.] as a result of that.

They kept him out of daycare for the remainder of that week. At various points during the week, he would be solely in [Petitioner]'s care. At other times, he would be in the sole care of the codefendant Donald Harris. Ultimately, during this week, there became another occasion when [E.H.] was severely beaten.

These injuries needed medical attention, and the medical examiner would have testified that if he had received medical attention, these wounds would not have been fatal. However, the extensive internal injuries resulted in parts of the organs dying and leading to peritonitis and infection in the thoracic and abdominal cavity; and that is ultimately what lead [sic] to the severe symptoms and lead [sic] to the death of [E.H.] on April 26th of 2013.

In the hours preceding his death, [E.H.] was in the care of both [Petitioner] and Mr. Harris. He was symptomatic with vomiting and diarrhea and became lethargic and complained of pain. [Petitioner] stated to police, gave them a detailed statement as to the treatments they attempted with him. Medical assistance was not sought until the time when [E.H.] ceased to breathe. At that point, [Petitioner] went to the neighbor and called 911. [E.H.] died a very short time later at the hospital.

***Post-conviction hearing***

At the evidentiary hearing, Petitioner testified that trial counsel visited her "at least ten times" to discuss her case while she was incarcerated prior to trial. She testified that trial counsel reviewed the State's discovery response with her.

Petitioner testified that she was bipolar and that she was taking "multiple medications" at the time she entered her plea. She testified that she "really didn't understand what was going on at the time [she entered her] plea." She acknowledged that she answered "no" to the trial court's questions at the plea submission hearing regarding whether she had any mental illness or was under the influence of any medication that would affect her ability to understand the proceeding.

Petitioner testified that trial counsel did not discuss with her any possible defenses she might have had if she had proceeded to trial. She testified that if her case had proceeded to trial, she would have testified that her codefendant abused the victim and that she was not aware of the severity of the victim's injuries. Petitioner believed that she "didn't deserve to get a second degree murder charge" and that "it should have been at least a neglect charge" because she did not cause the victim's death. Petitioner testified, "I shouldn't never [sic] left my son at home with somebody that was abus[ive] to me and to him, and I just feel like I could've called the police, but I was scared to call them."

Petitioner testified that she "felt pressured" by trial counsel to accept the plea. She testified that trial counsel told her that if she was convicted by a jury, she would "probably [have gotten a] life sentence."

On cross-examination, Petitioner acknowledged that she had a mental evaluation prior to trial and that she admitted to the examiner that she counted the number of times Mr. Harris struck the victim. Petitioner testified that she did not recall the trial court explaining to her the potential sentencing range for second degree murder at the plea colloquy. She acknowledged that she read and signed the plea agreement.

Upon questioning by the post-conviction court, Petitioner acknowledged that trial counsel had informed her that testimony about the victim's multiple injuries that would have been presented at trial.

Trial counsel testified that he had been an attorney since 1976 and that he primarily practiced criminal law. He testified that he "couldn't begin to estimate th[e] number" of jury trials in which he represented defendants. Trial counsel testified that he worked in the public defender's office when he began his representation of Petitioner in this case, and trial counsel continued to represent Petitioner after he left his employment with the public defender's office and entered private practice. Trial counsel testified that

he met with Petitioner on several occasions and reviewed the State's discovery response with her.

Trial counsel testified that Petitioner underwent a mental evaluation, which the court ruled was inadmissible at trial. Trial counsel testified that he also consulted with two sociologists, and he was prepared to present a defense of domestic violence and battered woman syndrome. Trial counsel testified that he attended the trial of codefendant Harris and saw the proof presented by the State. Trial counsel interviewed witnesses, and he "felt comfortable that [they] were prepared to go to trial[.]" Trial counsel advised Petitioner of her possible sentence if she was convicted at trial. He discussed "in some detail" the evidence against her and the likelihood of conviction at trial. Regarding Petitioner's understanding of her discussions with trial counsel, trial counsel testified,

> [Petitioner] frequently did express understanding. There were other times that her understanding was faulty or she appeared confused. There were some times that, in my personal opinion, she lost focus and was unwilling to really face the enormity and the immediacy of the dilemmas that she was, in fact, involved in.

Trial counsel testified that he was "pretty careful" in reviewing the plea agreement with Petitioner, and Petitioner "voiced understanding."

On cross-examination, trial counsel testified that plea negotiations lasted several weeks. Trial counsel did not explain to Petitioner what a "*Hicks* plea" was, and "we did not dwell on the fact that this was a plea out of range on [m]urder to the [s]econd [d]egree. We certainly talked about the fact that the plea offer was significant, and it was less than the punishment for [m]urder in the [f]irst [d]egree." He testified that "[i]t made it easier for her to accept the plea, without any doubt. [Petitioner] was more comfortable accepting the plea being in her best interest as opposed to a more specific factual agreement." Trial counsel testified that Petitioner's mental state did not "seem different" from her usual mental state at the time she entered her plea, but that "her apparent mental state varied reasonably significantly over the course of [trial counsel's] representation." Trial counsel added, "we had relatively regular issues about maintaining her on the medications." Trial counsel testified that Petitioner's medications were changed and that sometimes she did not receive them in the jail.

In a written order denying post-conviction relief, the post-conviction court noted that Petitioner testified that it was in her best interest to plead guilty to a lesser included offense and that "it was her choice to plead guilty." The post-conviction court further noted that Petitioner "testified that trial counsel visited her 'at least ten times' and

acknowledged that he had reviewed the evidence with her." The post-conviction court found that Petitioner had a "mental health evaluation," and that following a hearing, the trial court granted the State's motion to exclude testimony about the evaluation because it "did not meet the standards set forth by *State v. Hall*, 958 S.W.2d 679, 689 (Tenn. 1997)." The post-conviction court accredited the testimony of trial counsel regarding the investigation and preparation of Petitioner's case and the circumstances surrounding Petitioner's guilty plea.

The post-conviction court concluded that Petitioner failed to establish by clear and convincing evidence that trial counsel was deficient or that she was prejudiced by any alleged deficiency. The post-conviction court further concluded that Petitioner entered her plea knowingly and voluntarily, finding that the plea submission hearing transcript reflected that the court "thoroughly explained to [Petitioner] the consequences of entering her plea and the rights she was waiving."

*Analysis*

Petitioner contends that she received ineffective assistance of counsel, resulting in a guilty plea that was not knowingly and voluntarily entered. Specifically, Petitioner asserts that trial counsel "never addressed" Petitioner's mental competency and did not have Petitioner properly evaluated. Petitioner also asserts that trial counsel failed to explain what a "*Hicks* plea" was prior to Petitioner entering her plea. The State responds that the record supports the post-conviction court's denial of relief.

To obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. T.C.A. § 40-30-103; *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Calvert v. State*, 342 S.W.3d 477, 485 (Tenn. 2011) (citing T.C.A § 40-30-110(f) and Tenn. Sup. Ct. R. 28 § 8(D)(1)). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). The factual findings of the post-conviction court are binding on an appellate court unless the evidence in the record preponderates against those findings. *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009). The post-conviction court's application of law to its factual findings is reviewed de novo with no presumption of correctness. *Calvert*, 342 S.W.3d at 485. A claim of ineffective assistance of counsel presents a mixed question of law and fact that is subject to de novo review with no presumption of correctness. *Id*.; *Dellinger*, 279 S.W.3d at 294; *Pylant v. State*, 263 S.W.3d 854, 867 (Tenn. 2008).

A petitioner has a right to "reasonably effective" assistance of counsel under both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to effective assistance of counsel is inherent in these provisions. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger*, 279 S.W.3d at 293. When a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland*, 466 U.S. at 687; *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). Failure to satisfy either prong results in the denial of relief. *Strickland*, 466 U.S. at 697.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Furthermore, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, *see Strickland*, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e. a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he or she would not have pled guilty but would instead have insisted on proceeding to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *House v. State*, 44 S.W.3d 508, 516 (Tenn. 2001). To satisfy constitutional standards of due process, a guilty plea must be entered knowingly, intelligently, and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). When evaluating the knowing and voluntary nature of a guilty plea, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). This court may consider the following circumstantial factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options

available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from trial.

*Blankenship v. State*, 858 S.W.2d 897, 905 (Tenn. 1993). "[A] plea is not 'voluntary' if it results from ignorance, misunderstanding, coercion, inducements, or threats." *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). A defendant's solemn declaration in open court that his plea is knowing and voluntary creates "a formidable barrier in any subsequent collateral proceeding" because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

The evidence in the record before us does not preponderate against the post-conviction court's finding that Petitioner received effective assistance of counsel and that her plea was knowingly and voluntarily entered. The post-conviction court accredited trial counsel's testimony that he adequately investigated Petitioner's case and prepared for her trial. Trial counsel and Petitioner testified that trial counsel met with Petitioner on several occasions and that trial counsel reviewed the State's evidence with Petitioner. Trial counsel testified, and Petitioner acknowledged, that Petitioner underwent a mental evaluation before trial. Trial counsel also testified that he consulted with sociologists and was prepared to present a defense of battered woman syndrome. Petitioner presented no proof at the evidentiary hearing that any additional evaluation would have established that she was incompetent.

Regarding Petitioner's claim that trial counsel did not explain what a "Hicks plea" was to her, we note that the judgment of conviction states that Petitioner's plea was "pursuant to State v. Hicks 2nd degree murder out of range" which appears to be a reference to the Tennessee Supreme Court's opinion in *Hicks v. State*, 945 S.W.2d 706 (Tenn. 1997) (holding that a knowing and voluntary plea waives any irregularity with regard to offender classification and release eligibility). However, it is not clear from the record whether it is a reference to that case or this court's opinion in *Hicks v. State*, 983 S.W.2d 240 (Tenn. Crim. App. 1998) (holding that a defendant may knowingly and voluntarily enter a "best interests" plea while maintaining his innocence). Petitioner pleaded guilty to second degree murder and agreed to a sentence of 28 years, which is longer than the trial court could have sentenced her if she had been found guilty of second degree murder by a jury and sentenced as a Range I offender. However, the judgment of conviction also classifies Petitioner as a Range II multiple offender, again pursuant to "St. v. Hicks." Our supreme court has stated that an out-of-range sentence is valid when imposed as a result of a plea bargain agreement and when entered into voluntarily and knowingly. *Hicks*, 945 S.W.2d at 709. Moreover, as this court held in our *Hicks* opinion, "[i]f the petitioner had the information required to make an intelligent

decision and if he understood the consequences of pleading guilty to . . . second-degree murder, then he entered his plea knowingly and intelligently despite his lack of specific knowledge of" a specific case or legal term. *Hicks*, 983 S.W.2d at 248. Accordingly, the term "Hicks plea" itself is irrelevant so long as Petitioner understood the consequences of her plea.

Petitioner failed to cite to any *Hicks* case in her brief and does not make any argument as to why or how Petitioner's understanding of "Hicks plea," a legal term, is important to determine whether Petitioner's plea was entered involuntary and unknowingly. Based on the proof presented at the post-conviction hearing, the post-conviction court found that Petitioner understood the consequences of entering her plea and that "she did so in her best interest." Petitioner maintained that she was innocent and that her co-defendant caused the victim's death, but she acknowledged that pleading guilty to the lesser included second degree murder was in her best interest. Trial counsel testified that he did not "dwell" on the fact that she would receive an out-of-range sentence in exchange for a lesser included conviction, but that he was careful in explaining the plea agreement to Petitioner and that Petitioner seemed to understand the consequences of her plea. The terms of the plea were set forth in writing, thoroughly explained to Petitioner by trial counsel, and explained again by the trial court during the plea colloquy. Petitioner testified that she had been given discovery and had several discussions with trial counsel. Trial counsel testified that he reviewed the plea agreement with Petitioner, and Petitioner testified that she read and signed the plea agreement. Trial counsel testified that he believed Petitioner understood the plea agreement and that she was more amenable to entering a best interest plea than a guilty plea. The record does not preponderate against the findings of the post-conviction court.

Petitioner has failed to establish that trial counsel was ineffective or that her plea was involuntary and unknowing. Accordingly, Petitioner is not entitled to post-conviction relief.

CONCLUSION

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE

- 8 -